The next case on today's docket is the case of Bill Russell doing business as Frank Russell in Sun Trucking, versus Jim Russell Individually and Jim Russell Servicing. And for the appellate, we have Mr. Alfred Sanders. And for the appellee, we have Lane Harvey. So, Mr. Sanders, you can proceed. I see we have, I think, the same panel we had the last time we were here. That's not by accident. Apparently, our clerk tracks those things, so we have continuity. Good deal, Pat. That tells me you're already familiar, at least, with the case here. As you are aware, what we're here about this time is pretty much a continuation of the last time, and it's whether or not the affirmative defense of Section 217 applies to the current remaining claim in this case, which is only against Jim Russell and Jim Russell Service. This court just missed Jim Russell Supply the last time we were here, and we just missed Jim Russell Sales at the hearing in July of 2015. In your last decision, you left open what was remaining in this case, the question, the factual question. Page 7 of your decision stated, Based on the record before us, we are unable to determine whether the violations that allegedly occurred during the periods in May of 1989 and in 1991 constitute separate and distinct breaches of the noncompete clause or an ongoing breach that began in June of 1986. Now, what this court was not aware of the last time we were here, because you had a limited record based solely for the purpose of the 308 appeal, was that in 1998, Judge Underwood had already issued a summary judgment decision against Jim Russell Service. They were declared to be in breach of this contract, and that damages had occurred, and the only thing left to decide was how much were those many damages. But you never moved to execute on there to have that determined. No one ever moved to have a determination or a hearing on damages. Because there were three, at that time there were three other defendants, so what we did do later was we filed for summary judgment on Jim Russell Supply, which was denied. We kept trying to move this to trial. It kept getting delayed time after time. No, but there was a judgment. Are you saying there wasn't a full judgment, it was only a partial judgment? It was a partial judgment. Okay. So the only thing that was remaining to be done was to have a bench trial on the amount of the damages, but we still needed to decide whether Jim Russell Supply, Jim Russell Sales, and Donna Russell were in fact guilty of breach as well. Donna Russell had been dismissed, we dismissed Supply, and we dismissed Sales. But we've already decided the issue of 217 as to certain dates. Correct. So are you saying that that's wrong now because of the prior judgment? No, no. What we're saying is that there is a judgment against Service for breach. There was never a judgment against Supply. And what your ruling said back in 2013, I believe, was the question that remains for the remaining defendant is whether or not the breach that they committed was an ongoing breach that began back with Supply. It's important to understand the dates that these corporations existed. Supply was formed in 1986. Service wasn't formed until 1989. The question for 217 is whether this is a third foul. The first case was dismissed on January 12, 1987, more than two years before Service was ever formed. So the question is whether there was a breach that began prior to January 12, 1987 that was occurring with Supply that was continued forward to Service. If there cannot be an establishment of the same act, which would result in the same legal conclusion, a breach, then 217 doesn't apply. If that breach began with Service, which was formed in 1989, then this is, at best, the second fouling, maybe only the first. So this breach has to be traced back to prior to the time that first case was dismissed or we do not have a third fouling here. Now, I've stated in my brief, and I'll reiterate here, that what they have to show to make that affirmative defense stick is that the activities of Jim Russell Supply prior to the dismissal of the first case constituted a breach. Secondly, that the breach was the same breach committed by Service in 1989 and that the breach was continuous from a point in time before the first case was dismissed and thus passed on to Service. And those are the findings that the trial court made? The trial court found that all that was true that you just said? They did. And that's what we're basically hearing. And was there an evidentiary hearing? There was. And so the standard of review is manifest with the evidence as to those factual findings that the trial court made, is that right? I think that probably would be the case, Your Honor, except if the court used a wrong legal standard in applying it. Because in this case, we have to have a breach on the part of Supply. And he did find that there was a breach on the part of Supply. The problem is this first case that looked at this contract was back in 1990, and that was the case of Russell v. Russell, 200 Illat III, 855 cited in my brief. That case specifically stated that the indirect and direct language in this contract was ambiguous. And it said that the intent of these parties was to prevent Jim Russell from competing with Bill Russell. So in order for there to be a breach of this contract, according to this court's decision 26 years ago, there had to be a showing of competition or an attempt to compete in order for there to be a breach. Judge Foster apparently disagreed with this court because his ruling stated in two separate places that the language of this contract was clear and unambiguous. It flew in the face of what this court said 26 years ago. So what we're saying is that he used the wrong standard because when he decided there was a breach, he decided that simply because Jim Russell had engaged in the trucking business. And that was the only reason. He said he was barred from being in the trucking business for any purpose at all in that geographical area during that 10-year period. But what this court said in 1990 was he had to be in the trucking business with some reason to compete with Bill Russell. Judge Foster did not address competition at all. He didn't address that there was anything in this case that cost my client any money or time. He just simply said it is an absolute that if he hauls, there's a breach. And that is not what this court said 26 years ago. You know, I have to admit, you've kind of lost me on the 26 years. This court remanded this case for a very specific finding, and that is whether under two periods of time, May 1989 and 1991, whether those were separate and distinct breaches of the non-compete clause or an ongoing breach that began in June 1986. So why are we talking about Judge Foster's ruling? Because it goes to the issue of what constitutes a breach. Okay. Well, if I look at, I pulled the complaint that's of issue because in the remand that we did and then in the order that was entered in 2015, we're really talking about paragraphs 12, 13, 14, and 15. You agree? These are the paragraphs that are at issue for this remand. And paragraph 12 says that in 1989 and for a period of time following that, the defendants Jim Russell, Donald Russell, and Service, Inc. did engage in the business of trucking, hauling, moving, and storage within a 100-mile radius. And I'll repeat that. Trucking, hauling, moving, and storage. That's the exact language of the non-compete clause. The exact language. Right. The allegation is the exact language of the non-compete clause. Then if you go to paragraph 14, which is the 91, same thing. Trucking, hauling, moving, and storage within a 100-mile radius, but this time it's of sales. Jim Russell's sales. Sales have been dismissed. Right. And that's my point is that we're talking about paragraph 14. There's only four paragraphs at issue, and in this complaint that we're talking about, one of the defendants has been dismissed. That was the 91 that we evidently didn't have before us at the time we rendered our Rule 23. And the other one was 1989, and it was against Service. Right. And it's got the exact allegations of the non-compete clause. So how is it different? How is it not subject to the prior ruling of this court under the Rule 23-217 finding that you've already had your two bites at the apple? And this is a third. I'm a little bit off. The Rule 23 order, at least I thought we said, that you've had more than one opportunity. There's been two. Right? Or am I wrong on that? Two opportunities. Dismissals. There was a dismissal in 1998. It was overturned. That was my first case I ever had. 13-217 has to do with voluntary dismissals. The statute of limitations gets extended, and that had happened twice, what we said in that. Correct. You're done after the first one. Okay. So go ahead. Well, what I'm understanding, Your Honor, was what you said, and I'm reading it, whether this was an ongoing breach that began in June 1986. That was the factual issue that you laid out in your decision. Right. And my point is that if the contract says that this is the non-compete, this is the language that you have to show, and then in your complaint, one of the defendants is dismissed, so really that's not an issue, right? Right. The other one is against service, but the allegation is the exact same as that prior non-compete that seems like we've already ruled on. How has the court erred in its ruling before us? How has the 2015 order erred? Explain that to me. Why is it in error? Because if you look at the decision that Judge Underwood had in 1998, one of the findings he made was that the plaintiff has been damaged. That would result from competition. Judge Foster made no such finding. He never found that Jim Russell's supply did anything to damage my client. In fact, that's my guess as to why the first two cases were filed in chancery only, because there had been no actual competition. There had been no actual damages. So they had no damages to claim. If I had to go to trial today and prove that Jim Russell's supply did anything to cost my client one dime or cost him one half, I couldn't do it. The evidence is not there. Then why are we here at all? Why are we here at all if you can't prove that? That's supply. Oh, okay, okay. This allegation is against service. Sorry?  I understand that, Your Honor. What I'm saying is if service committed a breach and supply didn't, then there cannot be an ongoing breach that can be reached back prior to January of 1987. If that breach began with service and service wasn't formed until two years after that first lawsuit was dismissed, how can this be a third file? And that's what we're saying. It couldn't be continuous. It couldn't be the same continuous breach. It cannot be continuous. There has to be a prior breach for this to be an ongoing breach. But if an actual breach did not occur until after the first lawsuit was dismissed, then this is at best a second filing, and 217 doesn't apply. And that's the problem. When Judge Foster found that there was a breach by supply, he used the wrong standard in making that decision because the standard was whether there is competition. And he totally ignored the 1990 decision and said it is not ambiguous language and it's an absolute strict liability. If he calls anything, it's a breach. And that's not the rule. That's not what this court said in 1990. There has to be some competition there. That's what's missing. In fact, when the defendant himself took the witness stand and was asked whether or not the acts that he committed with Jim Russell Supply was a breach, he said no. He was asked why. He said because I wasn't competing with Bill Russell. And the fact is there is absolutely no evidence in this case at all to indicate that what Jim Russell Supply did formed any type of competition with Bill Russell because Jim Russell Supply was in the business of selling magnetite. Jim Russell Service was in the business of hauling it to third parties, which is exactly what my client did. So that's our issues. The order that you refer to in 1990, that's an order of this court? Yes. It's a decision of this court interpreting this very contract. And to be honest, I don't recall whether I imagine that was probably an appeal filed as a result of the second case because the first one was voluntarily dismissed. And I'm not sure how that ended up on appeal if they were both voluntarily dismissed anyway. That's what kind of got me confused. I'm not totally sure that second one was voluntarily dismissed, but I just don't know how you get an appeal if you voluntarily dismiss someone. But that was certainly Russell v. Russell interpreting this very contract. And it said you have to have competition because the language was ambiguous and the intent of the parties was to prevent competition. And yet the language doesn't say that in the contract. It doesn't say competition. It just says engage in the business of. I understand that. And I'm now relying on what this court said 26 years ago. It said that language is ambiguous when it said direct or indirect. And that's to a large degree why we took the position for so long. And quite honestly, when I took this case, I didn't even know about that. I thought in the beginning that the conduct by Jim Russell's supply would be an indirect breach because he was hauling stuff, but he was hauling his own material. When he actually got in the trucking business and he admits the service was in the trucking business, that it became a direct breach. Judge Foster said they're both indirect breaches, which I don't know how service could be an indirect breach if he's doing exactly what my client's doing. That's about as direct as it gets, and that's why Judge Underwood issued that, part of why he issued that order in 1998. But this is the subject and part of my brief was why we were assigned the burden of proof, because this is an affirmative defense by the defendant. And Judge Foster gave us the burden of proving this was not a breach. Now, regardless of who technically was assigned that burden, the defendant had every opportunity to put any witnesses they wanted to on the witness stand that day. They didn't put anybody up. In fact, the only person that testified regarding competition was the defendant himself, and he said flat out in a statement against his interest, I was not competing with Bill Russell in what I did with Jim Russell's supply. That was an uncontroverted statement that I think the court should have taken as true, and that the court had then followed the decision from 1990, would have had to have said that there was no breach on the part of Jim Russell's supply, and at that point, there could have been no breach to carry forward to assign to service. As a result, 217 would not apply. Without the proof of the competition, there can be no finding of breach on the part of Jim Russell's supply. It's that simple. And if there was no breach by Jim Russell's supply, then how can the activity of service be, in this court's own words, an ongoing breach? Well, you know, when he said I wasn't competing, that's not a statement of fact. He's expressing an opinion, and it would be up to, by trier of fact, to determine whether or not he was competing by selling his own, hauling his own magnetite. Okay? Right. Well, the trial judge did find differently, evidently, and found that it was an ongoing, continuous breach. And the question for us is, is there sufficient evidence in the record to support that finding? Because that's what the manifest way to the evidence. Right. Unless an opposite conclusion is clearly apparent, then we should affirm on his factual findings. Right. That is correct. Okay. Now, the problem is, he made no findings of competition or damage at all. Well, he might not have used that language, but he found that it was an ongoing, continuous thing that put supply and service, et cetera, all did beginning in 1986 was the same thing. He did, but he only was able to make that finding by applying strict liability to the language. Because he said he's in the hauling business, period, he's in breach. In this court in 1990, he said, no, that is not the case. There's something extra to this. So that's the problem. His entire finding was based on a premise that this court said was not true 26 years ago. So that's our concern, is he's applied the wrong legal standard as to what constitutes a breach on the part of general supply. Thank you, Your Honor. Mr. Sanders, you'll have the opportunity to rebut. Yeah. Thank you, Your Honor. Mr. Lane. May it please the court. I fundamentally disagree with counsel as to why this case is here. This case is here on a very narrow issue. In the last Rule 23 order that this court issued, you found that the causes of action in all three of the refiling of this case were essentially the same. You found that 13217 precludes the third refiling and effectively deprives the court of subject matter jurisdiction for the third refiling. The question is not whether somebody found something in 1990 about what was a breach. The question is not whether Judge Underwood found an impartial summary judgment almost two decades ago that maybe service had somehow or the other been guilty of a breach. The question, as this court framed it in paragraph 20 of its previous order, was, as a matter of fact, was the filing in 1998 of the Second Amendment complaint seeking to allege an ongoing tort. The question is, at the time of the filing, was the intent to allege an ongoing tort? That's the only question before the court today. We're not here to try some judgment about who competed or didn't compete or damaged or didn't damage. We're here to define that very simple issue. My submission to you is that the first place you look is the language of what was filed. Look at the complaint and you will notice, and I don't mean to go through with you Judge Foster's order. Judge Foster went through with some specificity the reasons that he determined that the claims were ongoing breaches. And he found that to be dismissed with prejudice. Judge Foster's order is supported by the language of the complaint. I'd ask you to please look at count one. Count one, paragraph nine. In direct violation and breach of set agreement, the non-compete agreement, Jim Russell and Donna Russell formed certain corporations, supply, sales, and service. They are not distinguished. As Your Honor has previously pointed out, paragraph 10 talks about supply. Paragraph 12 talks about the formation of service. Paragraph 15 talks about the formation of sales, 14 to 15. The point of the matter is the language about each of the three corporations are exactly identical. They are not distinguished. I'd ask you to look at paragraph 16 of count one and see what he alleges. He alleges as a result of the breach, not the breaches or anything else, as a result of the breach, singular. Of the formation agreement by the defendants, all of the defendants are named jointly. They are not distinguished. He's saying that they all acted jointly. And as a result of that, he's damaged. Now, if it has been his intent to say, well, oh, my goodness, service did something different than supply, and sales did something for service, he would have been required to put each of those in a separate count under section 603 of the Code of Civil Procedure. He didn't do it. The clear intent reflected on the face of the complaint is that they all acted together essentially as alter egos of the defendant. And it has to be that way because you may note that neither sales nor service nor supply are signatories to the agreement. So but for sales, services, supply, acting as alter egos of the defendant, how are they even liable? And that's exactly what Judge Foster found. That's exactly what Judge Foster found. That's what he said. He said that regardless of which of these entities was doing it, you know, it's still a violation by Jim Russell because he's doing it indirectly. And, Your Honor, if you look at page 11 of our brief where we quoted some of the questions and answers of Mr. Russell, the defendant, Mr. Russell, what he said was, yes, supply, I own the magnetite that supply hauled, but I hauled it to these particular lines with these trucks and these people. And what Judge Foster said about that, he said, wait a minute, there's nothing in the agreement that says Jim Russell can't own magnetite. It says it can't haul it. And so he was clearly hauling the magnetite for supply with service. I asked him very specifically, service, did you haul the same product? Yeah. Did you haul it to the same lines? Yeah. Did you haul it to the same drivers? Pretty much. And then I asked him if I asked you the same question about sales, would the answers all be the same? And he said, yeah. And that's the basis. That's the factual basis for Judge Foster's finding that this was a continuing course of conduct. And, you know, that evidence is uncontradicted. So the first thing, and Judge Schroeder, you're absolutely correct, this is a case where we're talking about manifest way. That testimony by itself precludes a finding that it's against the manifest way. But the other thing that's of interest here, there's a couple of other things. In 2011, and we put this in as Exhibit C, the documentation that we submitted to Judge Foster, and one of the things that's interesting to note about this, the first time we ever heard about these separate and distinct causes of action that counsel's arguing about now was about 15 minutes after you issued your Rule 23 order. Because for the 20 years before that, nobody had ever heard of it. And the proof of that is look at these answers to interrogatories we propounded in December of 2011. Here's the question. What's the theory of the damages? And he says, well, the theory of damages is breach of contract. What is the basis of the damages you claim? Here's what he said in sworn answers to interrogatories. The basis of damages is that in 85, the parties entered into a contract by which the plaintiff paid Jim Russell for his act of interest in the business. Defendant Jim Russell breached the non-compete agreement from 1985 by forming a series of companies, the other defendants in parentheses, that competed directly and indirectly with the plaintiff and his company, Frank Russell and Sons Trucking. How do you say it clearer than that? From 1985, he used these companies essentially as tools to breach the contract. Now, that's what he said 13 years after he filed the Second Amendment complaint in 1998. If you look at the Second Amendment complaints language, he clearly says it's joint, ongoing, everybody's in it together. In answering interrogatories, he then swears to. What else do we have to have and how does that support any claim that anything Judge Foster had to say was somehow or the other against the manifest weight of the evidence? And I submit to you that it doesn't. If that's not enough, we've cited and we submitted to Judge Foster the brief that counsel submitted to this court the last time we were here and what he described to this court as the reason he was here, and I direct you to page five. Page five of that brief, he describes his cause of action and he lists five different points about this cause of action from the 1998 complaint. The fifth one is that the complaint, quote, allege actual loss of multiple customers as a direct result of defendants. Please note that singular, not plural. Defendants, Jim Russell. Defendants actions over the period between 85 and 95. What was defendants singular actions as alleged in the complaint? Well, he formed three companies. He hauled and stored and did the things that Your Honor talked about during 85 and 95. And if we're to believe the truth of the sworn interrogatories, he did throughout that period of time using these three companies, all his alter egos, for the purpose of breaching the contract. That's what he said to the court that this case was about when he was last here before your ruling. And I said yes. So we made a mistake. We should just have not even considered these next three, these other three years. I have a question seriously about the appellant's argument. What is the relevancy of this argument about the prior judgment? I have no idea. Okay. I have no idea, Judge, because we're here on a very limited issue. And what I perceive the issue to be is whether at a point, at some point, did the court lose subject matter jurisdiction to pursue in any event. That's what I thought we were here on. That's what I think we're here to argue about. Because, you know, the point of the matter is if the court didn't have subject matter jurisdiction to proceed in 1998 on whatever it is that Judge Underwood found, then Judge Underwood's judgment doesn't matter. And whatever the court may have ruled or not ruled about interpreting the contract in 1990, clearly, as we all know from looking at this, what is now getting to be a fairly voluminous record, we all know that there has been no final judgment entered determining anything about anything. The question at this point is not what Judge Underwood found or what this court may have said about interpreting the contract in 1990 or anything else, but is there subject matter jurisdiction to do anything else in this case? Because, you see, here are the facts. The facts are there have been two prior voluntary dismissals before this third filing. The issue is real simple. It's why we were here before. And your honors said, and I think, frankly, giving plaintiff the benefit of the doubt, is this 1989-1991 something different or is it a continuation of what happened? And I think when you take a look at what Judge Foster heard and you look at the documentation, like the interrogatory answers, that was not a part of the record when we were here before, it becomes very clear that the intent up until the second you entered this Rule 23, in which you said that if it's an ongoing thing, the court doesn't have jurisdiction and it has to be dismissed, up until that point, it was a continuing thing. And I know that because his client swore to it. I know it because he said it in the brief that he submitted to this court. And I know it because that's what he put in the complaint that he filed in 1998. So it seems to me that those things are just, at least to me, and I would confess to you I'm a poor country lawyer, but it seems to me that those things are just blatantly obvious. And that those things, absolutely and beyond any question, support Judge Foster's actions, not only beyond any question of abuse of discretion or manifest weight, I think it would be an abuse of discretion and a violation of manifest weight if Judge Foster had done anything else. So it seems to me that the question that we're here to talk about is that very narrow question. And counsel has frankly made no argument that it addresses that very narrow question. He didn't make it in his brief. He hasn't made it here today. And the only other point that I would make, Your Honor, is this business about the burden of proof thing, I'd say two things about that. It was our view that when this court ruled previously, you essentially said the law is that you can't have a third refiling. It seems to me that when you remanded, you at least made a prima facie finding that there is a basis to believe that he may have had a third refiling. And in the case law recited, it indicates that he wants to say that there is an exception to the third refiling rule. It's on him to show it. That's why I think the burden of proof, and Judge Foster determined the burden of proof was on him. But the other thing about the burden of proof argument, if I may be very direct, it's a red herring. There is absolutely no conflict in the evidence here. Put the burden of proof wherever you want to put the burden of proof, the outcome is the same. And if you discuss the issue that is at stake arising out of this court's previous order, burden of proof really doesn't matter. And, you know, I'm looking at paragraph 20 of that order. And you may recall that when we were here before, I requested that in the event you answer both questions that were certified in the affirmative, which you did, that you simply dismiss the case and we'd be done with it. And you determined that both questions were answered in the affirmative, but that there was enough ambiguity, apparently, in the complaint that it wasn't clear as to whether he was alleging an ongoing course of conduct or there was something different about 89 and 91. Well, I think we've now established, certainly to Judge Foster's satisfaction, based upon evidence, and I submit based upon all of the documentation in this case, that there is no room to even make a good faith argument that there's any alleged separate, distinct cause of action as opposed to ongoing. That's what Judge Foster found. Judge Foster's ruling was correct. It's time to put this thing to bed once and for all. And I simply would ask the court, please, affirm Judge Foster's ruling so we can all get on with our lives. Thank you. Thank you, Mr. Harvey. Do you have a problem, Mr. Sanders? Your Honor, I don't recall there being any decision by this court that there was a question about my pleadings or my intent or any of that the last time we were here. You said, we decline, however, the defendant's request to enter judgment in their favor because factual issues remain that must be considered by the trial court. We need an evidentiary hearing on certain facts, and it had to do with whether or not there was an ongoing breach that began prior to January the 12th, 1987. Without that ongoing breach, 217 cannot apply because it would require a breach to begin prior to that to go back into the first case to make this a third filing. Your Honor, as, again, the relevance of the prior judgment, the judgment, the prior judgment means that the allegations against service aren't just allegations. It's a judgment. There was a breach by that. As a result, for 217 to apply, that breach has to be extended all the way back to supply. If there is no breach by supply, there is no ongoing breach, and therefore, 217 doesn't apply. So this is the problem. Where Judge Foster was ruling, he said in paragraph 13 of his order, Jim Russell could not haul, could not truck or haul anything in any capacity whatsoever, directly or indirectly, without breaching the non-complete clause. Strict liability is what he applied. And this court in 1990 said that is not the case. There has to be some finding of competition here, and there was none. In fact, every bit of evidence that was presented said that there was no competition. If you look at the two cases, there were no claims for damages because they could not prove them. The defendant himself took the witness stand after 29 years of saying he didn't breach it with Jim Russell's supply and said I didn't breach it because I wasn't competing with him. There was no evidence at all presented to Judge Foster that what he did with Jim Russell's supply cost my client one single haul or one single cane or one minute of time. But the first complaint was against supply, right? Correct. Oh, first, but yes. The second complaint was against supply, right? Just supply. The third, which is the one we're dealing with now, has everyone in it. Correct. All jointly, as appellees said. So we've already determined that at least as to supply, is this your argument, at least as to supply? It's gone. It's gone. But as to service, somehow, despite the fact that they're all mixed in together, we should carve them out because of this judgment in 1989. Is that your argument? Am I tracking that correctly now? They should be carved out if, in fact, what they did was a completely separate breach. Well, but how are we to determine that? Because, like I said, I'm writing down what you say, and I've got service. I'm sorry. Supply is 1986, so supply is also in the second complaint. Supply is in the third complaint. We know the third complaint is out, but in the third complaint is also supply, service, and all the other individuals. So how am I to know, based on your argument, what new evidence there is? And this was the whole purpose of the Rule 23. Where is the new evidence about the breach that gets you around the third complaint? Is it the judgment? And that's what I'm talking about, the burden of proof. They had the burden of proving that there was a breach to be continuous. It's not up to us to prove there was a breach. It's up to them to prove there was. There was a hearing. The evidence was in. Right. And now we have an order, and that's the order that, as Justice Stewart said, we have to look at the manifest way of the evidence. Unless he used the wrong standard, and that's what I'm saying. He decided that supply was in breach by applying the standard of strict liability. I don't disagree. He applied strict liability. They're in breach. How do we know he used strict liability? I may have missed that. Because he said Jim Russell could not haul truck or haul anything in any capacity. Will you finish answering that question? Just the sentence, if you would. Could not haul anything in any capacity whatsoever, directly or indirectly, without breaching the non-compete clause. So if he did it at all, he's in breach. That was Judge Foster's finding, and that's not what this court said in 1990. The stuff that this court required in 1990 was missing, completely missing. So if there's no breach by supply, there's no 217. Thank you, Mr. Sanders and Mr. Harvey, for your briefs and arguments. We'll take the matter under review.